WALTER A. STAHELI, petitioner-appellant,

*v.*

EDITH M. STAHELI, defendant-respondent.

[Submitted February 5th, 1946—Decided May 3d, 1946.]

*Mr. Milton M. Unger,* for the appellant.

*Mr. Benjamin Kleinberg* (*Mr. Seymour R. Kleinberg* and *Mr. David I. Stepacoff,* of counsel), for the respondent.

PER CURIAM.

This appeal is from a decree in Chancery dismissing a husband's petition for divorce. The issue is entirely factual.

It appears that respondent wife had a friendship with one Miller, arising out of their employment together in a manufacturing plant. The testimony on behalf of petitioner sought to show a course of conduct between respondent and Miller at various times and places out of which a charge of adultery is drawn. On the brief here filed appellant states, "Petitioner's proof is, however, confined to the adultery alleged to have been committed in the latter part of May, 1944, near Easton (Penna.) in the roadside cabin, and on November 16th, 1944, in a car parked on Clover Avenue, in Rahway." The allegation as to the occurrence in Pennsylvania may be immediately dismissed. At the close of the testimony counsel admitted lack of proof thereon:

"The court:  *  *  *   There is no adultery proved in Pennsylvania.

Mr. Unger: That's right."

We therefore have for consideration only the occurrence of November 16th, 1944. It is evident that respondent met Miller by pre-arrangement on this occasion. Having driven her car from Cliffwood Beach to Linden, she met Miller, who then entered the car and drove with her from Linden through portions of Somerset and Union Counties. On the trip they picked up another man and with him they stopped at a tavern. The explanation of the trip is that respondent knew that Miller desired to purchase a used automobile truck and that she had informed Miller that she had learned that a truck could be found in this general area. Their quest was fruitless, however, and, after leaving off the person who had been picked up on the journey, respondent and Miller were returning to the place where they had originally met when, Miller testified, they observed that they were being followed by another car. Miller turned the car into a dark roadway and parked. The sequence of events from that moment on are informally summarized by the Advisory Master as follows:

"What is the evidence as the 16th of November, 1944? In evidence is that on that night at around ten-thirty o'clock the car in which Miller and the defendant admittedly were riding, drove into a lane in a secluded part of the outskirts of Linden and parked. They had been followed all the way from Sterling by a car in which a private detective and the petitioner were riding. The private detective and the petitioner said they stopped their car after this other car went into the lane—the car containing the defendant and Miller—and they waited for about twenty minutes before they went up to the car. They said it was so dark they couldn't see it, and there were no lights on it, but the shine of the bumper led them to it.

"They said the car was two hundred feet in the lane, but they came to it with such quietude and secrecy that the detective was able to open the door and flash his light on before they realized he was there. When he opened the door and the flashlight was put on the people—and the light in the car

went on by reason of the opening of the door—as all admit, the position of the defendant was that she was half reclining against the door and the window in the front seat in this car, and that the alleged corespondent was lying over her three-quarters of the way the witnesses testified.

"Immediately upon the car door being opened, naturally the gentleman converted himself from the position he was in to another, and he was grabbed by the detective by the vest, or chest, or clothing at his neck. The detective didn't see that the man's clothing was disarranged. All he said was that when they came to the car the alleged corespondent pulled his overcoat around him.

"There was no indication that the woman's clothing was other than slightly above her knees, and that there was no part of her person in view.

"There is evidence on the part of the detective that a conversation was had in which the woman admitted her guilt and said she was going to kill herself, said, 'Don't bring this man's name into it.' That is denied by the defendant and by the corespondent. Of course they are interested witnesses, but nevertheless it was denied by them.

"Those are the physical facts of the only act of adultery to be shown. Therefore in a case of this kind I would want to be entirely satisfied that there was inclination and desire proved. I can't find it, very frankly."

A careful study of the testimony leads us, under the familiar rule of *Cartan* v. *Phelps, 91 N. J. Eq. 312,* to concur in the finding of the Advisory Master thus expressed.

The argument on appeal is that the proofs were sufficient to bring the case within the well understood inclination and opportunity rule. But under that rule "The evidence must be convincing. Its probative quality must be such that it decidedly supports the charge of adultery. As frequently stated, it must be of a character to satisfy and leave the careful and guarded judgment of the court free from conscientious perplexing doubts as to whether the charge was proved." *Lotz* v. *Lotz, 129 N. J. Eq. 476, 477,* and cases there cited.

Conceding that the explanation of respondent respecting her purpose in meeting Miller on the night of November 16th,

1944, is an improbable story, we conclude, nevertheless, that the guilt of respondent of the adulterous act charged is not made out.

The decree under review is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, PERSKIE, OLIPHANT, WELLS, RAFFERTY, DILL, MC-GEEHAN, JJ. 10.

*For reversal*—PARKER, J. 1.